UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

           Plaintiff,

    v.

NANCY R. SCIOLINO,

           Defendant.

NO. 2:09-CR-0070 FCD

<u>AMENDED MEMORANDUM AND ORDER</u>

----oo0oo----

    This matter is before the court on defendant Nancy R. Sciolino's ("Sciolino" or "defendant") motion to suppress statements made to two Special Agents of the United States Postal Service ("the officers") on November 19, 2008.  Defendant is charged in the indictment with one court of embezzling postal funds in violation of 18 U.S.C. § 1711, one count of theft of U.S. money in violation of 18 U.S.C. § 641, and twelve counts of false entries and reports of U.S. moneys in violation of 18 U.S.C. § 2073.  (Indictment [Docket #9], filed Feb. 19, 2009). Defendant submitted a declaration in support of her motion to

suppress.[1]  Having reviewed the file herein and heard the arguments of counsel, the court DENIES defendant's motion to suppress.

## BACKGROUND[2]

Sciolino began working for the U.S. Postal Service in February 1985.  She was a part-time flexible clerk for eight years and became a full time clerk in 1993.  From December 6, 2007 until September 30, 2008, Sciolino was the Officer in Charge at the Farmington, California Post Office.  Subsequently, she was a Sales and Service Associate in the Acampo, California Post Office, but was used as a "floater clerk" when other post offices needed her.

On November 19, 2008, Special Agent Linda M. Russo ("Russo") of the United States Postal Service, Office of the General Inspector, interviewed defendant Sciolino at the Acampo, California Post Office after presenting her credentials and explaining that the purpose of the interview was to discuss the shortage that was discovered in Sciolino's individual clerk

---

[1] Defendant requested an evidentiary hearing on the basis of the facts set forth in her declaration.  An evidentiary hearing on a motion to suppress need only be held when the moving papers allege facts sufficient for the district to conclude that contested issues of fact exist. United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000).  Where a defendant cannot assert facts that, if proved, would allow the court to suppress the confession, an evidentiary hearing is not warranted. Id. Because, as set forth infra, the facts alleged in defendant's declaration, if true, are not a sufficient basis for suppression, the court denied defendant's motion for an evidentiary hearing.

[2] The facts herein are generally undisputed. (See Def.'s Ex. A, B, C to Mot. to Suppress, filed May 18, 2009; Gov't Response to Mot. to Suppress, filed July 20, 2009, at 1 n.1.) Where the facts are disputed, the court recounts defendant's alleged facts.  (Def.'s Decl. in Support of Mot. to Suppress Statements ("Sciolino Decl."), filed Aug. 21, 2009.)

2

drawer at the Farmington, California Post Office. Russo asked Sciolino to read the Office of Inspector General's "Acknowledgment of Rights Form." The form provided that a Special Agent was conducting an investigation into a matter affecting defendant's official duties. It also provided that, in connection with this investigation:

1. I have the right to remain silent if my answers may result in a criminal charge being brought against me.

2. Anything I say or do may be used as evidence in administrative proceedings, civil proceedings, or any future criminal proceeding involving me.

3. If I refuse to answer the questions posed to me on grounds that the answers may tend to incriminate me, I cannot be discharged solely for remaining silent.

4. This interview is strictly voluntary and I may leave at any time.

(Ex. B to Def.'s Mot. to Suppress.) Sciolino initialed each of the numbered statements and then signed that she had read and understood the rights. (Id.) The Acknowledgment of Rights Form was Dated November 19, 2008 at 9:57. Special Agent Patricia Ford-Smith ("Ford-Smith") was also present at the interview.

Sciolino asserts that throughout the interview, one of the inspectors repeatedly said words to her to the effect of, "I know what you did," "You need to tell the truth," and "You need to tell us you took the money." (Sciolino Decl. ¶ 2.) She also asserts that as the interview progressed and she denied the accusations, the questioning by the inspector became more hostile, and the inspector raised her voice in an angry manner. Sciolino further asserts that when she attempted to get a drink of water, the inspectors stood up and blocked the door; the

3

inspectors then watched her as she got a drink of water outside the door to the break room. (Sciolino Decl. ¶¶ 5-7.)

During the interview, Sciolino made incriminating statements. Further, she also produced a written statement, containing incriminating statements. (Ex. C to Mot. to Suppress.) Sciolino asserts that inspectors suggested to her what she should write in that statement. (Sciolino Decl. ¶ 9.) The signed statement provides that Sciolino made the decision to make the written statement "freely, knowingly, and voluntarily, and without any threats or promised having been extended." (Ex. C to Mot. to Suppress.) The statement was also made under penalty of perjury. The first page of the sworn statement was dated November 19, 2008 at 11:05; the last page, following the content of the statement was dated November 19, 2008 at 11:38. (Id.)

**ANALYSIS**

**A.   Failure to Administer Miranda Warnings**

Sciolino moves to suppress all statements made by her during the interview on November 19, 2008 on the grounds that the statements were involuntary and obtained without valid warnings and waiver of rights in violation of Miranda v. Arizona, 384 U.S. 436 (1966) ("Miranda"). Specifically, defendant asserts that she was not advised of her right to the presence of an attorney during the investigation. Thus, the question before the court is whether Sciolino was "in custody" such that her statements were obtained in violation of Miranda.

"In Miranda v. Arizona, the Supreme Court held that statements that are not the product of interrogation not preceded

4

by appropriate warnings are inadmissible, where the accused was questioned while 'in custody or otherwise deprived of his freedom of action in a significant way.'" United States v. Beraun-Panez, 812 F.2d 578, 580 (9th Cir. 1987) (quoting Miranda, 384 U.S. at 444). However, "an officer's obligation to give a suspect Miranda warnings before interrogation extends only to those instances where the individual is 'in custody.'" United States v. Bassignani, – F.3d –, 2009 WL 2392915 (9th Cir. Aug. 6, 2009) (quoting United States v. Kim, 292 F.3d 969, 973 (9th Cir. 2002)).

In the Ninth Circuit, a person is "in custody" for purposes of Miranda "when, based upon a review of all pertinent facts, 'a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave.'" United States v. Wauneka, 770 F.2d 1434, 1438 (9th Cir. 1985) (quoting United States v. Booth, 669 F.2d 1231, 1235 (9th Cir. 1981)). This inquiry is measured by an objective standard, and is not based upon "the subjective views of the officers or the individual being questioned." Kim, 292 F.3d at 973; Beraun-Panez, 812 F.2d at 580. Moreover, the interpretation of "custody" under Miranda has been "narrowly circumscribed." United States v. Nieblas, 115 F.3d 703, 705 (9th Cir. 1997).

"To determine whether an individual was in custody, a court must, after examining all of the circumstances surrounding the interrogation, decide 'whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Kim, 292 F.3d at 973 (quoting Stansbury v. California, 511 U.S. 318, 322 (1994)). Pertinent facts to

consider include: (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. Beraun-Panez, 812 F.2d at 580; Wauneka, 770 F.2d at 1438. Other factors may be relevant, or even dispositive of, "the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators;" the Beraun-Panez factors simply recur frequently. Kim, 292 F.3d at 974.

While the Ninth Circuit has not explicitly addressed the issue relative to determinations of whether a defendant is in custody,[3] generally, "the burden of production and persuasion rests on the person seeking to suppress evidence." United States v. Smith, 783 F.2d 648, 650 (6th Cir. 1986); United States v. Arboleda, 633 F.2d 985, 989 (2d Cir. 1980). The Fifth Circuit, Eighth Circuit, and numerous district courts have also explicitly held that a defendant bears the burden of proving he was in custody at the time incriminating statements were made. United States v. Davis, 792 F.2d 1299, 1308 (5th Cir. 1986); United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989); United States v. Abbas, 418 F. Supp. 2d 280, 285 (W.D.N.Y. 2006); United

---

[3] In the original opinion filed by the Ninth Circuit in United States v. Bassignani, the court addressed the specific issue regarding the burden of proof in demonstrating whether a defendant is in custody for purposes of Miranda. 560 F.3d 989, 993 (9th Cir. 2009) (holding that defendant bore the burden of proof and noting that the language in the Miranda opinion regarding the government's "heavy burden" applied to determinations regarding waiver, not custody). However, this portion of the opinion was deleted in the amended opinion. Bassignani, 2009 WL 2392915, at *1.

States v. Donaldson, 493 F. Supp. 2d 998, 1003 (S.D. Ohio 2006); United States v. Morriss, No. 06-6010, 2006 WL 3519344 (W.D. Mo. Dec. 6, 2006).[4]

### 1.   Language Used to Summon the Individual

The Supreme Court and the Ninth Circuit have found that suspects were not in custody where the circumstances included volunteering to answer law officers' questions. Id. (citing California v. Beheler, 463 U.S. 1121, 1125 (1982) (holding that defendant was not in custody when he agreed to accompany police to the station to answer questions and was allowed to leave immediately afterward); Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (holding that defendant was not in custody when he came to the station voluntarily and left 'without hindrance' after 30 minutes of questioning)).

Defendant contends that she did not voluntarily acquiesce to questioning by law enforcement based upon the circumstances under which the officers approached her. She argues that no reasonable person would feel able to break off an encounter after agents approached her at work during business hours and told her they wanted to discuss shortages in her drawer.

The court disagrees. There is no evidence that Russo or Ford-Smith approached defendant in a confrontational or threatening manner. Nor is there evidence that the officers either instructed or ordered Sciolino to accompany them for questioning. Cf. Bassignani, 2009 WL 2392915, at *4 (finding

---

[4] Even if the burden lies with the government, under the facts before the court, no reasonable person could find that defendant was in custody when the statements were made.

7

that the defendant did not voluntarily "agree to accompany" the officers to the conference room where he was "instructed" to remove himself from the computer and go to the room).  Rather, the only facts asserted by defendant is that she was approached and work and told officers wanted to talk to her about shortages in her drawer.  Viewing these facts under the objective, "reasonable person" standard, defendant voluntarily accompanied the officers upon request "for the very purpose, known in advance, of answering their questions."  Kim, 292 F.3d at 969.

    **2.  Extent to Which Defendant is Confronted with Evidence of Guilt**

The Ninth Circuit has found a defendant in custody where an "interrogator adopts an aggressive, coercive, and deceptive tone."  Bassignani, 2009 WL 2392915, at *5.  In United States v. Beraun-Panez, "[t]he officers demanded to know why [Beraun-Panez] was lying and said they knew the truth.  They told him that witnesses had placed him at the scene, even though their two witnesses had in fact stated only that they had seen a tan truck, like that Beraun-Panez used, within several miles of [the site of the alleged crime]."  812 F.2d at 579; see also Wauneka, 770 F.2d at 1439 ("The questioning progressed for over an hour and turned accusatory - Wauneka was told that he supplied information that only a perpetrator would know, that he matched the description of the rapist, and that he had better tell the truth.").  In contrast, the Ninth Circuit has found a defendant not in custody when the officers "did not attempt to challenge [the defendant's] statements with other 'known facts' suggesting his guilt, they
/////

merely asked [him] about the allegations." <u>Norris</u>, 428 F.3d at 913 (citation omitted).

Defendant asserts that throughout the interview, she was told that the officers knew what she did and that she needed to tell the truth. Assuming that defendant was conclusorily told that the officers knew what she did, there is no evidence that Sciolino was ever confronted with any "evidence" or "known facts" relating to her guilt.[5] Unlike <u>Beraun-Panez</u> or <u>Wauneka</u>, defendant has not asserted that she was told the officers already had incriminating evidence against her, that she matched a witness description of the perpetrator, or that she had specific information that only a guilty party would know. While, assuming defendant's assertions are true, the court cannot conclude that the interview was conducted in a wholly "open" and "friendly" tone, the court also cannot find, under the facts before it, that this factor weighs heavily in favor of finding custody. <u>Cf.</u> <u>Bassignani</u>, 2009 WL 2392915, at *5.

### 3. Physical Surrounding of the Interrogation

"[A]n interrogation conducted in familiar surroundings weighs against a finding that the defendant was in custody." <u>Id.</u>; see <u>Beckwith v. United States</u>, 425 U.S. 341, 346-48 (1976). The Supreme Court has recognized and given great weight to the

---

[5] The court notes that defendant was asked specific questions about shortages on certain days and the accuracy of audits and daily financial lists. Russo also informed Sciolino that she knew Sciolino was having financial difficulties. However, none of these questions or representations constitute the type of evidence or "known facts" that courts have found compelling to this factor. However, the court acknowledges and takes these circumstances into its consideration regarding its determination of whether defendant was in custody.

9

finding that "the principal psychological factor contributing to successful interrogation was isolating the suspect in unfamiliar surroundings 'for no other purposes other than to subjugate the individual to the will of the examiner.'" Id. at 346 n.7 (quoting Miranda, 384 U.S. at 457). However, the Ninth Circuit has recognized that the consideration of the familiarity of the surroundings in the custodial interrogation context may be neutralized where law enforcement officers take complete control over the environment, creating "a police-dominated atmosphere." See Kim, 292 F.3d at 977-78 (finding a "police dominated atmosphere" was created when police cars surrounded the store where defendant was questioned, officers locked the front door and directed the defendant to sit in a specific spot, officers positioned themselves around her such that she was 'surrounded,' and defendant was prohibited from speaking with her husband and son); see also Beraun-Panez, 812 F.2d at 582.

    In this case, Sciolino was interviewed in a break room within her workplace – plainly a familiar environment. See Bassignani, 2009 WL 2392915, at *6. There is no evidence that the officers took over complete control of the location by locking defendant inside, intentionally isolating her, or subjecting her to their directions, such that they created a "police-dominated" atmosphere that neutralized the familiarity of the location. Rather, defendant admits that she got up and had a drink of water outside the break room. Further, at the outset of the interview, defendant explicitly acknowledged that she was free to leave at any time. Accordingly, the court finds that the

/////

physical surroundings weigh against a finding that Sciolino was in custody.

### 4.   Duration

Lengthy questioning often weighs in favor of a finding that a defendant was in custody.  See Bassignani, 2009 WL 2392915, at *6.  While courts have not established a specific length of time that defines a custodial interview, the Ninth Circuit has held a 45-90 minute interview supported the conclusion that a defendant was in custody.  Kim, 292 F.3d at 977.  However, the Ninth Circuit has ultimately found that a defendant was not in custody even though he was interrogated for more than an hour, and the Supreme Court has denied suppression of statements made during the course of a three hour interview conducted without Miranda warnings where the circumstances indicated that defendant voluntarily acquiesced to the questioning.  United States v. Crawford, 372 F.3d 1048, 1059 (9th Cir. 2004) (en banc); Beckwith, 425 U.S. at 342-44.  As such, the relevance of this factor is dependant upon the court's findings with respect to the other factors relevant in this case.

In this case, Sciolino was interrogated between 60 and 90 minutes.  Under relevant Ninth Circuit precedent, the length of the interview weighs in favor of a finding that defendant was in custody.

### 5.   Degree of Pressure Applied to Detain the Individual

The Ninth Circuit has "consistently held that a defendant is not in custody when officers tell him that he is not under arrest and is free to leave at any time."  Bassignani, 2009 WL 2392915, at *7 (citing Crawford, 372 F.3d at 1060 ("Perhaps most

11

significant for resolving the question of custody, Defendant was expressly told that he was not under arrest . . . ."); United States v. Norris, 428 F.3d 907, 912 (9th Cir. 2005) ("[Norris] was told that his cooperation was voluntary and that he was free to terminate the interview at any time.  Norris was also told that he was not under arrest and he was never restrained in any way.")).

Sciolino was not physically restrained or locked in the room while questioned by the officers.  Moreover, she was explicitly told and she acknowledged at the outset of the interview that her participation was voluntary and she was free to leave. Accordingly, this factor weighs heavily against a finding that defendant was in custody.

**6.  Totality of the Circumstances**

Viewing the circumstances of this case as a whole, a reasonable person in defendant's position would not have concluded that she was not be free to leave or that she was deprived of freedom of action in a significant way.  Importantly, Sciolino explicitly acknowledged at the outset of the interview that she was free to leave and not compelled to speak to the officers.  Sciolino also explicitly acknowledged, after the interview and before making a written statement, that her statement was made freely, knowingly, and voluntarily.

While the interview lasted for over an hour and at times, Russo pressed defendant to tell the truth and represented that the officers knew she took the money, on balance, a number of factors present in this case militate against suppression of the statements: (1) Defendant was asked to speak to the Special

12

Agents while at work in a break room; (2) She was explicitly advised that she did not have to speak to the officers, statements could be used against her as evidence in any type of proceeding against her, she could not be discharged for remaining silent, and the interview was "strictly voluntary" and she could "leave at any time"; (3) During the course of the interview, defendant was allowed to leave the break room to get a drink of water; (4) While Russo raised her voice and represented that she knew Sciolino was guilty, the officers did not represent that they had independent evidence of her guilt or other "known facts" that implicated Sciolino in a crime; and (5) Finally, at the end of the interview, Sciolino made a written statement under penalty of perjury that she explicitly acknowledged was made freely and voluntarily.  Under these circumstances, the court cannot find that this was the type of coercive interrogation by law enforcement against which <u>Miranda</u> seeks to safeguard. Furthermore, the evidence does not indicate that defendant was deprived of her freedom in a significant way by the officers.

Defendant relies primarily on the Ninth Circuit's decision in <u>United States v. Bassignani</u> in arguing that the circumstances in her case far exceed what the Ninth Circuit found was a close case, and thus her statements were the statements were involuntary and obtained without valid warnings.  2009 WL 2392915.[6]  However, the facts of <u>Bassignani</u>, in which the court

---

[6] Defendant cites to the Ninth Circuit's opinion that was withdrawn as a result of an amended order issued subsequent to the majority of the parties' filings in this case.  However, the portions cited by defendant remain unaltered by the Ninth Circuit's amended decision.

13

1  held that the district court abused its discretion in granting
2  the defendant's motion to suppress, present a much closer case
3  for suppression than those before the court in this case.  In
4  Bassignani, detectives approached the defendant at his work and,
5  as the defendant was hesitant to leave his work station, asked
6  the defendant multiple times to remove himself from the computer
7  and accompany them to the conference room.  Id. at *2.  A
8  detective remained at the defendant's side as he was escorted to
9  a conference room where two other officers were already waiting.
10  Id.  The officers took the defendant's car keys and executed a
11  search warrant on the car while the defendant was being
12  questioned.  The door to the conference room was closed, and
13  while the defendant was told he was not under arrest, he was
14  never explicitly told that he was free to leave.  The defendant
15  was questioned for two and a half hours.  Id.  On review, the
16  Ninth Circuit held that the facts did not support a finding that
17  the defendant was in custody.  Id. at *7.  While the court noted
18  that the defendant did not voluntary accompany the officers to
19  the interview and that the interrogation was lengthy, the court
20  found it significant that the defendant was not confronted with
21  evidence of guilt, the interview took place in familiar
22  surroundings, and the officers did not pressure the defendant to
23  confess.  Id.  As such, under the totality of the circumstances,
24  the court concluded that, although it was a "close case" a
25  reasonable person in the defendant's circumstance would conclude
26  that after brief questioning, he was free to leave.  Id.
27      The circumstances of the questioning in this case were far
28  less restrictive than those present in Bassignani, which the

14

Ninth Circuit held were not sufficient to support a finding that the defendant was in custody. In this case, unlike in Bassignani, there is no evidence that defendant was hesitant to speak to the officers or accompany them for questioning. Further, unlike in Bassignani, the officers were not executing a search warrant and did not take Sciolino's keys. Defendant was also allowed to leave the break room for a drink of water. Defendant was also questioned for at most 90 minutes, at least a full hour less than the defendant in Bassignani. Furthermore, facts that the court found significant to a finding of custody in Bassignani, namely that the defendant was not confronted with evidence of guilt and was interviewed in a familiar setting, are also present in this case. Finally, in this case, defendant was explicitly told that she was free to leave at any time.

Therefore, under the totality of the circumstances, the court finds that a reasonable person in defendant Sciolino's position would have felt free to leave. Accordingly, she was not "in custody" for purposes of Miranda, and her statements made on November 19, 2008 will not be suppressed.

**B.   Voluntariness of the Statements**

Defendant also argues that her statements should be suppressed because she did not voluntarily submit to interrogation and thus, her statements were not made voluntarily.

In determining the voluntariness of a confession, the Ninth Circuit considers "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir. 1993)

15

(quoting Miller v. Fenton, 474 U.S. 104, 112 (1985)).  In a non-custodial setting, the voluntariness of a defendant's statements depends on "whether the accused was deprived of his 'free choice to admit, to deny, or to refuse to anser.'"  Garrity v. New Jersey, 385 U.S. 493, 496 (1967) (quoting Lisenba v. People of State of California, 314 U.S. 219, 241 (1941)).

In this case, defendant was questioned in the break room at her work place.  At the outset, defendant was informed that she did not have to speak to the officers, that she would not be terminated if she remained silent, and that she was free to leave at any time.  Defendant explicitly acknowledged these rights.  For the reasons set forth above, the court concludes that defendant was not placed in a coercive or police-dominated atmosphere.  Further, defendant proceeded to handwrite a two page statement, in English, under penalty of perjury, at the conclusion of the interview.

Under the totality of the circumstances, the court concludes that defendant Sciolino's statements were voluntarily made.

**CONCLUSION**

For the foregoing reasons, defendant's motion to suppress statements made on November 19, 2008 is DENIED.  The matter is set for a further status conference on September 21, 2009 at 10:00 a.m.

IT IS SO ORDERED.

DATED: September 10, 2009.

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

16